THE STATE v. THEODORE STEGNER, Appellant.

Division Two, December 23, 1918.

1. **INFORMATION: Forgery: Corporation.**   An information which charges that a forged check was "drawn on the American National Bank, a banking corporation duly organized and existing according to law," sufficiently alleges the corporate capacity of the bank and does not violate the rule that in criminal pleading nothing is to be left to intendment or implication.

2. ——: ——: **Name of Natural Person.**   A name signed to what purports to be a check indicates that the maker is a natural person, and if the information set forth the check *in haec verba*, together with the name of the purported maker, it is not necessary that it contain a specific allegation that such maker was a natural person.

3. ——: ——: **General Terms.**   The essential element of forgery is an intent to cheat and defraud, and under the statute (Sec. 4921, R. S. 1909) it is sufficient if the charge be made in general terms, special averments as to the character of the maker or of the person defrauded being unnecessary.

4. **EVIDENCE: Forgery: Expert: Comparison of Letters.**   It is not only competent for an expert on disputed handwriting, after having compared a letter conceded to have been written by the defendant with the check alleged to have been forged, to state that in his opinion both instruments were written by the same person, but also that the reason for his opinion was the similarity in the formation of the letters in the two instruments.   Not only may an expert resort to comparison, but the facts upon which his opinion is based are a proper subject of inquiry.

5. ——: ——: **Parol: Existence of Bank.**   The corporate existence of a bank named in an information as the one on which the forged check was drawn may be proved by parol.

6. ———: ———: ———: **Funds in Bank.** It may be shown by parol that the purported maker of the alleged forged check had no funds in the bank on which it was drawn.

7. **WITNESSES: Indorsement on Information.** It is not error to permit a witness whose name is not indorsed on an information to testify for the State unless there is a showing that the defendant has, by reason of such failure, suffered prejudice.

8. ———: ———: **Motion to Quash.** The failure to indorse the name of a witness for the State on an information should be called to the attention of the trial court by a motion to quash.

9. ———: **Cross-Examination: Reading Poem to Jury.** It is not an abuse of discretion or an improper restriction of the latitude permissible in! the cross-examination of witnesses, to refuse to permit a witness for the State on cross-examination to read a poem written by the witness derogatory to defendant, although the witness pronounces it "fine literature" and the purpose of having it read is to discredit him.

10. **INSTRUCTIONS: Circumstantial Evidence.** Where there is direct evidence of defendant's guilt, an instruction on the weight to be given circumstantial evidence is not required.

11. **REMARKS OF ATTORNEY: Former Conviction.** Remarks of the prosecuting attorney in his argument to the jury concerning the conviction of defendant on a former trial are improper and in direct conflict with the statute; but if not preserved in such a way as to permit review they are not reversible error.

12. ———: **Court's Approval of Conviction.** A remark by the prosecuting attorney in his argument to the jury that if the trial court had not been satisfied a finding of guilty was authorized he would have "grabbed the prosecutor and the principal witness and thrown them out of the window," was reversible error. It meant that the trial court had passed upon and approved the State's testimony as to defendant's guilt, and was therefore prejudicial.

Appeal from Jackson Criminal Court.—*Hon. Edward E. Porterfield, Judge.*

REVERSED AND REMANDED.

*M. A. Fyke* and *E. F. Halstead* for appellant.

(1)  The information is fatally defective, for the reason that there is no allegation that the American National Bank was a bank incorporated under the laws of any State, territory, government or country, or that it was such incorporated bank at the time of the alleged offense. State v. Washington, 259 Mo. 335. (2)  The information is defective in that there is no allegation

that the name of C. W. Howell is the name either of a person or of a fictitious person. State v. Minton, 116 Mo. 605; Sec. 4643, R. S. 1909. (3) The court erred in permitting witness Vining, testifying as an expert, to bolster up his own testimony, by giving argumentative testimony, and giving the reasons for his conclusions by comparison of certain strokes and letters in the disputed writing, over the objections of defendant. State. v. Hyde, 234 Mo. 256. (4) The court erred in permitting witness Pickerell to testify when his name was not endorsed upon the information over the objections of defendant. (5) The court erred in permitting witness Pickerell to testify as a matter of his own conclusion and hearsay, that the American National Bank was a corporation organized under the laws of the United States over the objections of defendant. R. S. 1909, sec. 5238; 2 Words and Phrases (2nd Series), p. 724; Fitzgerald v. State, 10 Ga. App. 70. (6) The court erred in permitting witness Pickerell to testify to matters of opinion and conclusion in stating that the American National Bank refused payment on the draft because C. W. Howell had no account in said bank, over the objections of defendant. (7) The court erred in not permitting defendant to have witness Bartlett under cross-examination, recite to the jury the derogatory poem, which witness testified he had written concerning defendant. State v. Horton, 247 Mo. 664; State v. Moreaux, 254 Mo. 398. (8) The court erred in refusing to instruct the jury upon the law of circumstantial evidence as pertaining. to this case, as to the sufficiency necessary to sustain a conviction, and as to the weight to be given to such evidence, as requested by defendant. State v. Fitzgerald, 201 S. W. (Mo.) 86. (9) The court erred in permitting the prosecuting attorney to state to the jury in his argument in referring to defendant, "Why hasn't he this man Howell here? He was tried by a jury in this court before. A jury passed on his case, and through a technicality he is back here again." Sec. 5283, R. S. 1909; State. v. Leabo, 89 Mo. 248; State v. Schneiders, 259 Mo.

332; State v. Drummins, 240 S. W. (Mo.) 271. (10) The court erred in permitting the prosecuting attorney in his argument to state to the jury: "Do you think his honor on the bench is a crook? If there was no case here he would grab me and Bartlett and throw me out of the window, and don't you forget it. I said his honor wouldn't let you men pass on it. This is the the law. . . . His Honor gives the law and the witnesses give the testimony, and that is the law given by His Honor. . . . He passes on whether the law has been violated and you twelve men on the jury are the only ones who can stamp it out. His Honor couldn't do it, but you twelve men in the box can by making examples of these men." State v. Kring, 64 Mo. 595; State v. Webb, 254 Mo. 414; State v. Hess, 240 Mo. 160; State v. Spivey, 191 Mo. 112; State v. Deitz, 235 Mo. 341.

*Frank W. McAllister*, Attorney-General, and *Thomas J. Cole*, Assistant Attorney-General, of counsel, for respondent.

(1) Appellant attacks the information because it does not state that the American National Bank is incorporated under the laws of the United States. The information is not for that reason defective. Sec. 4643, R. S. 1909; United States v. Williams, 28 Fed. Case No. 16706; State v. Washington, 259 Mo. 335; Sec. 5115, R. S. 1909; Wentz v. Chicago, B. & Q. R. Co., 259 Mo. 450; Ann. Cas. 1916B, 317; Davis v. McColl, 179 Mo. App. 198; Contra: Sherwood's Commentaries on Criminal Law of Missouri, p. 351. The information, however, states that the check was "drawn on the American National Bank, a banking corporation duly organized and existing according to law." The words quoted show that there is no merit in this complaint. (2) The information is not defective because it fails to allege that C. W. Howell was a fictitious person. Sec. 4643, R. S. 1909; Chapman v. State, 34 S. W. (Tex.) 621; Johnson v. State, 35 Tex. Crim. 271, 33 S. W. 231. (3) The court did not err in allowing witness Vining to show to the

jury the similar characteristics which he believed existed in defendant's handwriting and in the alleged signature, "C. W. Howell." Sec. 6382, R. S. 1909; Weber v. Strobel, 194 S. W. 274; Goodyear v. Vosburg, 63 Barb (N. Y.) 154; United States v. Chamberlain, 12 Blatch. 380; Hawkins v. Grimes, 52 Ky. (13 B. Mon.) 262; Marshall v. Thomas, 31 Ohio C. C. 368; Storey v. First National Bank of Louisville, 24 Ky. L. R. 1801; 6 Encyc. Evidence, 384. (4) The court did nót err in allowing witness Pickerell to testify as to whether or not the American National Bank was a corporation. Such fact can be shown by general reputation. Sec. 5238, R. S. 1909; State v. Fitzsimmons, 30 Mo. 239; State v. Cheek, 63 Mo. 364; State v. Jackson, 90 Mo. 159; State v. Decker, 217 Mo. 322; State v. Wise, 186 Mo. 46; State v. Knowles, 185 Mo. 169. (5) The court did not err in refusing to permit the poem witness Bartlett wrote about the defendant to be read in evidence. The extent of the inquiry as to interest or bias of a witness rests in the discretion of the trial court. 40 Cyc. 2659; State v. May, 172 Mo. 647; Czezewzka v. Benton-Bellefontaine Ry. Co., 121 Mo. 201; People v. Lustig, 206 N. Y. 172. (6) If there was direct and positive evidence of defendant's guilt, it was not necessary for the court to instruct on circumstantial evidence. State v. Crone, 209 Mo. 330; State v. Bobbitt, 215 Mo. 43; State v. Salmon, 216 Mo. 529; State v. Hubbard, 223 Mo. 84. (7) The action of the prosecuting attorney in stating, in effect, that defendant had been tried before, and that through a technicality defendant was given a new trial, was not properly saved for appellate review. Appellant's counsel merely objected to this remark and then entered into a discussion with the prosecuting attorney as to the truth or falsity of the remark. No ruling was made by the court on the objection, and no exception was saved to the failure of the court to rule. Neither was there a request for a rebuke. State v. Whitsett, 232 Mo. 529; State v. Phillips, 233 Mo. 307; State v. Harrison, 263 Mo. 662, 663. This former conviction was referred to without objec-

tion, in the evidence.  Therefore it was not reversible error for the prosecuting attorney to mention it in his argument.  State v. Leabo, 89 Mo. 248.  (8) The prosecuting attorney also, in effect, said in his argument that if the State had no case, the trial court would not let the jury pass on it.  Appellant's counsel objected, and their objection was overruled, and they duly saved their exceptions.  No specific reason for the objection was stated, and therefore, the objection was of no force or effect.  State v. Tatman, 264 Mo. 370; State v. Miller, 264 Mo. 407; State v. Phillips, 233 Mo. 307.

WALKER, P. J.—Appellant was charged under Section 4643, Revised Statutes 1909, by information in the criminal court of Jackson County, with forgery in the second degree.  Upon a trial he was convicted and his punishment assessed at five years' imprisonment in the penitentiary.  From this judgment he appeals.

Appellant was in arrears for rent on an apartment he occupied in Kansas City.  Upon being notified by the landlord that unless payment was made, he would be required to vacate the premises, he brought a check to the landlord for $25 and tendered it in payment of the rent.  The latter refused to accept the same, and sent the appellant to his, the landlord's attorney, who accepted the check.  This check was payable to the order of appellant, was endorsed by him, and was drawn on the American National Bank of Austin, Texas, and purported to have been signed by one C. W. Howell.  At the time of the delivery of the check by appellant to the attorney, he showed the latter a land contract from which it appeared that appellant had sold two lots, describing them, in Wing & Steen's Addition to Kansas City, for $1400, twenty-five dollars of which was to be paid at the time the contract was made.  Appellant, in tendering the check in payment of the rent, stated that it represented the $25 payment made to him under the contract.  The attorney, upon receiving the check in payment of the rent, gave appellant a receipt therefor, and placed the check in a bank

for collection. In due course of time it was returned unpaid. Testimony was adduced for the State that there was no addition to Kansas City designated as "Wing & Steen's Addition." On behalf of defendant, however, a plat entitled, "Wing & Steen's Addition to Kansas City," was introduced in evidence, and a witness testified that he had employed appellant to sell certain lots therein, the description of same being identical with those named in the appellant's land contract. This witness testified that he knew nothing of the "C. W. Howell," by whom the check purported to have been drawn, and if any contract had been made to effect a sale of the lots to said Howell witness had no knowledge of same. Experts testified that in their opinion certain letters offered in evidence, which were shown to have been written by the appellant, were in the same handwriting as that of the name of "C. W. Howell," appearing on the check. Admissions of appellant were testified to, that he had written the land contract, and experts gave it as their opinion that the body of this contract was in the same handwriting as the name of C. W. Howell on the check.

Testimony was given for the State that "C. W. Howell" had no account with the Austin Bank named in the check. There was also testimony tending to show that there was no such person residing in the City of Austin as "C. W. Howell."

The count of the information upon which the conviction was had, omitting formal parts, is as follows:

That Theodore Stegner "feloniously and willfully did forge, counterfeit and falsely make a certain false, forged and counterfeited check purporting to be made by C. W. Howell and drawn on the American National Bank, a banking corporation duly organized and existing according to law, and a bank doing a general banking business in the City of Austin and State of Texas, County of Travis, which said false, forged and counterfeited check or draft is of the tenor following, that is to say: 'The National Reserve Bank of Kansas City, Missouri, July 10, 1915. At sight pay to the order of

276 Mo.—28.

Theodore Stegner $25.00. Twenty-five and no/100. Value Received and charge the draft to the account of C. W. Howell. To the American National Bank, Austin, Texas. Endorsed: Theodore Stegner, E. M. Bartlett.' C. W. Howell, with the felonious intent thereby then and there to injure and to defraud, against the peace and dignity of the State.''

The pertinent portions of the statute upon which the information is bottomed are as follows: ''Every person who shall forge or counterfeit, falsely make or alter, or cause or procure to be forged, counterfeited or falsely made or altered, any order or check being or purporting to be drawn on any bank'' (incorporated under the laws of this State or of any other State, territory, government or country), ''or any cashier thereof, by any other person, company or corporation, shall, upon conviction, be adjudged guilty of forgery in the second degree.'' [Sec. 4643, R. S. 1909.]

I. It is contended that the information is defective in not averring the corporate capacity of the bank on which the check was alleged to have been drawn. The exact language employed is that the check was ''drawn on the American National Bank, a banking corporation duly organized and existing according to law, and a bank doing a general banking business in the City of Austin,'' etc. Certainly, a bank cannot be ''a banking corporation organized and existing according to law,'' unless the same has been incorporated as such. It would be refining technicalities to a degree beyond reason to contend otherwise. While the averment, the omission of which is complained of, is not affirmatively made, it is so clearly indicated as to admit of no other construction than, that it is a statement of the corporate capacity of the bank. It does not, therefore, violate the rule of criminal pleading that nothing shall be left to intendment or implication, and that the appellant shall be clearly apprised of the nature and cause of the accusation against him. [1 Bish. Cr. Pro. (2 Ed.) Section 77, p. 59; State v. Birks, 199 Mo. 263;

*Information.*

State v. Furgerson, 152 Mo. 92; Id. 162 Mo. 668; Const. Mo. Art. 2, Section 221.] In so doing, it necessarily follows, as we hold, that it sufficiently conforms to the language of the statute (Sec. 4643). The overruling of appellant's contention in this regard does not militate against what we said in reference to the information in State v. Washington, 259 Mo. 335, in which it was held that there was no averment of corporate capacity.

Further contention is made that the name of C. W. Howell, by whom it appeared the check had been made, was neither a person nor a fictitious person. So far as the contention is intended to question the sufficiency of the averment of C. W. Howell's character as a natural person, it will suffice to say that the information sets forth the tenor of the check. It was not necessary, therefore, to make a more specific allegation in this regard than that indicated by the instrument itself. C. W. Howell's name appeared thereon as maker. Our knowledge of the use of words common to every one of average intelligence leads to no other conclusion than that a name thus signed to what purports to be a check was intended to indicate that the maker was a natural person. The essential element of the crime charged was an intent to cheat and defraud. Under the statute, therefore, upon which this information was based, and that of procedure in regard to crimes of this character (Sec. 4921, R. S. 1909), it was sufficient if the charge be made in general terms, special averments as to the character of the maker or of the person defrauded being unnecessary. The false instrument, as here pleaded, showing on its face that it had sufficient efficacy to enable it to be used to the injury of another, it was consequently immaterial whether the name signed thereto as a maker was that of a real or fictitious person. Only essential allegations so pleaded as to fully apprise the accused of the nature of the accusation against him are required. [State v. Chissell, 245 Mo. l. c. 556; State v. McConnell, 240 Mo. l. c. 271; State v. McGrath, 228 Mo. l. c. 428; State v. Harris, 209 Mo. l. c. 433; State

State v. Stegner.

v. Yerger, 86 Mo. 33.] Rulings elsewhere upon similar statutes are of like effect. [Williams v. State, 126 Ala. l. c. 56; People v. Stearns, 21 Wend. (N. Y.) 409; State v. Givens, 5 Ala. l. c. 759.] Although no allegation as to the fictitious character of the maker be made, it is not error to admit evidence of same. [Johnson v. State, 35 Tex. Cr. R. 271; Chapman v. State, 34 S. W. (Tex. Cr. Ct.) 621.] The case of State v. Minton, 116 Mo. 605, cited by appellant to sustain the contention that the information should have averred the fictitious character of the maker of the check is not relevant. It construes a statute (Sec. 4663) denouncing the offense of affixing a fictitious name to a pecuniary demand or obligation. That is not the offense here charged.

II. A witness named Vining, qualified as an expert on disputed handwriting, was asked to compare a letter, conceded to have been written by the appellant, with the check alleged to have been forged, and **Testimony.** to state his conclusion in regard to the identity of the writings. Having done so, he testified that in his opinion both instruments were written by the same person. This is assigned as error; not as to the admission of this character of testimony, which is authorized, under a well established rule of evidence (1 Greenl. Ev., sec. 580), frequently approved by this court (State v. Scott, 45 Mo. l. c. 304; Corby v. Weddle, 57 Mo. l. c. 458; State v. Tompkins, 71 Mo. l. c. 616; State v. Owen, 73 Mo. l. c. 441), and relaxed by statute (Sec. 6382, R. S. 1909) as to the proof of the genuineness of the instrument sought to be compared with that alleged to have been forged. [State v. Stark, 202 Mo. l. c. 221; State v. Witherspoon, 231 Mo. l. c. 718; State v. Pace, 269 Mo. l. c. 681; Weber v. Strobel, 194 S. W. l. c. 274.] Appellant contends, however, that despite the propriety of the admission of this character of testimony as a general proposition, the court erred in permitting the witness to state that the reason for his opinion was the similarity in the formation of the letters of the alphabet in the two instruments. An expert

witness in order to testify as to his opinion in regard to the identity of disputed writings, must, of necessity, resort to comparison. While the purpose of his examination is to secure his opinion based upon such comparison, the facts upon which the latter was based are not an improper subject of inquiry. For example, expert witnesses as to handwriting may testify in regard to the difference or similarity of letters or words or, in fact, in regard to any matter appearing on the face of the writings; and the rule is the same in criminal and in civil cases. [United States v. Chamberlain, 12 Blatch. 390; Goodyear v. Vosburgh, 63 Barb. (N. Y.) 154: Hawkins v. Grimes. 13 B. Mon. (Ky.) 257; People v. Hewit, 2 Park. Crim. (N. Y.) 20; Storey v. First Nat. Bank, 24 Ky. L. Rep. 1799; Moody v. Rowell, 17 Pick. (Mass.) 490.] The case of State v. Hyde, 234 Mo. l. c. 256, cited by appellant in support of his contention in this behalf, is not in point. There the expert witness, upon a proper inquiry made by the State, gave her opinion as to the nature of the poison. Not content with her conclusion, it was attempted to add to its force by a physical demonstration before the jury, that she could recognize this character of poison by its odor. We held that this was error, and properly so, not only in the language of the author of the opinion, that it was in the nature of "a theatrical display," but that it constituted an apparent effort to give cogency to the witness's opinion. No such effort was manifested here, and there is nothing in the Hyde case which, by remote analogy, can be reasonably urged as an authority for appellant's contention.

It is contended that error was committed in permitting the corporate existence of the bank named in the information to be proved by parol. This is permissible under the statute. (Sec. 5238, R. S. 1909), and has been so held in numerous cases. [State v. Moreaux, 254 Mo. l. c. 412; State v. Decker, 217 Mo. l. c. 322; State v. Knowles, 185 Mo. l. c. 169; State v. Wise, 186 Mo. l. c. 46.]

Nor was it error to permit a witness shown to have been familiar with the facts to state that "C. W. Howell," the purported maker of the check, had no account with or funds in the bank upon which it was drawn. [Williams v. State, 126 Ala. l. c. 57; People v. Eppinger, 105 Cal. 36; Rex v. Backler, 5 Car. & P. 118.]

It is urged that the testimony of one of the witnesses for the State should have been excluded, because his name was not endorsed on the indictment. Our rulings (State v. Robinson, 263 Mo. l. c. 324; State v. Walton, 255 Mo. 232; State v. Ivy, 192 S. W. l. c. 735; State v. Jackson, 186 S. W. 990) have been uniformly to the effect that we will not, under Sections 5057, 5097, Revised Statutes 1909, hold it to be error to fail to so indorse a witness's name, there is a showing that the defendant has, by reason of such failure, suffered prejudice. There is no showing of that character here. Furthermore, it is expressly provided by Section 5097, applicable to informations as well as indictments (See Section 5057), that failure to so endorse a witness's name will not preclude his examination, subject, of course, to the conditions above stated. Under any circumstances, the error complained of should have been called to the trial court's attention by a motion to quash the information. [State v. Robinson, 263 Mo. l. c. 324, and cases cited.] In State v. Barrington, 198 Mo. 23, 66, cited in the Robinson case with approval, this court, speaking through Fox, J., exhaustively discussed the subject of the endorsement of the names of witnesses on a criminal charge. The gist of this opinion is, first, that the formal manner required by our procedure to present the error here assigned, is by motion to quash; and, second, that the ruling of the trial court thereon will not be disturbed unless it appears that the defendant has thereby been deprived of some right material to his defense; in other words, that he has suffered prejudice. In the presence of the facts at bar, we overrule this contention.

A witness for the State, on cross-examination, was asked, as he stated he was able to do, to recite to the jury a poem he was alleged to have written derogatory to the appellant. A repressive admonition from the court prevented the release of this poetic effort in the hearing of the jury, which the witness voluntarily stated was "fine literature." A brilliant French woman is reputed to have said that "no man was ever dissatisfied with his own wit." It was not unwise, therefore, that this tribute to the muses should be relegated by the court to the golden domain of silence. The purpose of seeking its introduction was evidently to affect the credibility of the witness. Despite our tender regard for those who essay, even for a short jaunt, to bestride Pegasus, this was no occasion for a recital, minstrel-like, of poetic *afflatus*. The *animus* of the witness, if it had been disclosed by his lines, could well and more succinctly have been shown by direct inquiry. Certainly, if it was sought in a more adroit manner to discredit the witness by showing what might have been in the mind of counsel for the appellant, viz., that the witness had made Pegasus limp rather than canter, the refusal of the court to permit the recital cannot seriously be said to have prejudiced the rights of the appellant. In thus ruling, we are not unmindful of the great latitude we held should be permitted in cross-examination in State v. T. B. Smith, 250 Mo. l. c. 365; State v. Steele, 226 Mo. l. c. 602; Gordon v. Railroad, 22 Mo. l. c. 530, and other cases; but such cross-examination should be in conformity with the well recognized rules of evidence, have a reasonable limit as to the nature of the inquiry, and tend to throw light upon the witness's attitude upon the subject under investigation. When the inquiry possesses none of these essentials and there is nothing in the record tending to show the witness's bias or prejudice, we will not interfere with the discretion of the court in excluding the recital and, thus, to an extent, limiting his cross-examination. [State v. May, 172 Mo. 646; State v. Montgomery, 28 Mo. 594.]

III. Appellant complains of the refusal of the trial court to give an instruction on circumstantial evidence. There was direct evidence of the appellant's guilt; where this exists, an instruction on the weight to be given circumstantial evidence is not required. [State v. Hubbard, 223 Mo. 1. c. 84; State v. Salmon, 216 Mo. 1. c. 529; State v. Bobbitt, 215 Mo. 1. c. 43; State v. Crone, 209 Mo. 1. c. 330.]

*Instructions.*

IV. The remarks the prosecuting attorney made in his argument to the jury are assigned as error. That concerning the former conviction of the appellant was reprehensible and in direct violation of the statute (Sec. 5283; State v. Leabo, 89 Mo. 257); but it was not preserved in a manner to merit a review. [State v. Harrison, 263 Mo. 1. c. 662; State v. Phillips, 233 Mo. 1. c. 307; State v. Whitsett, 232 Mo. 529.] Another remark was to the effect that if the trial court had not been satisfied that a finding of guilty was authorized, he would, to employ the exact language of the attorney, have "grabbed the prosecutor and the principal witness and thrown them out of the window." This, to the lay mind could have no other meaning than that the trial court had passed upon and approved the State's testimony, as to the defendant's guilt. Such a remark cannot be construed other than as prejudicial. It says in effect to the jury: "In addition to the evidence adduced, the court thinks this defendant guilty, or he would not have permitted this prosecution." In the face of the numerous admonitions given by this court to prosecuting attorneys to refrain from that intemperate zeal which has no place in the prosecution of crime, and is in clear violation of official duty, we find nothing to palliate this conduct. That it was prejudicial to the appellant is beyond question; and what would otherwise have been a conviction meriting an affirmation must be reversed and remanded. It is so ordered.

*Remarks of Prosecuting Attorney.*

All concur.