# Literal v. Commonwealth.

(Decided Oct. 6, 1933.)

E. J. PICKLESIMER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant was indicted for the offense of forgery. Upon his trial at the February, 1933, term of the Pike circuit court, he was tried and convicted, and sentenced to confinement in the penitentiary for two years. He appeals.

The indictment charges that:

"The said W. S. Literal in the said County of Pike, on the 12th day of April 1924, and before the finding of this indictment did unlawfully, feloniously, fraudulently, and without the knowledge, consent or authority of Polly Caines, and with intent to defraud the said Polly Caines and the First National Bank of Williamson, W. Va., sign the name of said Polly Caines to a check which was in words and figures as follows:

" 'Williamson, W. Va., April 12, 1924

No. ———

" 'The First National Bank of Williamson. Pay to the order of W. S. Litreal Five Hundred ———— Dollars.

" 'For note

" 'Savings        W. S. Literal

her

" 'Polly X Caines

Mark'

"Stamped Paid April 16, 1924.

"The said First National Bank of Williamson, West Virginia, is a bank legally and duly organized and incorporated under the laws of the United

States and the State of West Virginia and was such at all times mentioned in this indictment."

The evidence discloses that Polly Caines was a widow, some 93 years of age at the time of her death, and that during the last twenty years of her widowhood she had lived with her son, Jim Caines. It further discloses that she could neither read nor write, was very frugal, and had invested part of the sum of $1,700 inherited from her brother and sister in land jointly with one of her sons and had deposited the remainder in the First National Bank of Williamson, W. Va., but a few miles distant from where she lived. It is further shown that this old woman had for some years conducted her business through her sons, Jim and Kenos Caines, but upon such arrangement proving unsatisfactory she had requested her brother-in-law, the appellant, W. S. Literal, to take over from them the charge of her business, or banking account, which he did in 1922, at a time when she was then past 80 years of age.

On April 12, 1924, the appellant admits that he drew a check, payable to his order, upon her banking account carried in the First National Bank of Williamson, W. Va., for the sum of $500, which he signed in the name of Polly Caines by mark. This check was written in ink and marked in its left-hand corner "for note." Also, the name of W. S. Literal, written in pencil, appeared on the face of the check as attesting witness to Polly Caines' signature by her mark, and again on the back of the check as indorser. He states and the check shows that he presented this check to the bank for payment and same was paid him by it on April 16, 1924, in the amount called for, of $500, with twenty-five $20 bills. Appellant also states that he went into the bank at Williamson on April 12, 1924, the date borne by the check, and there wrote the check, but denies that he then or at all wrote his name in pencil as an attesting witness to the signature by mark of Polly Caines, though he admits the indorsement signature of his name on the back of the check also made with pencil was written by him when he cashed the check.

From an examination of these two signatures of his name thus appearing on the face and back of the note, it would clearly appear they are so identical in their form of lettering and style of writing as to most

strongly induce the conclusion that they were written by one and the same person.

Polly Caines having died in April, 1932, Jim Caines, her son, became her administrator, and as such took over the charge and liquidation of her estate, when, after securing from the Williamson bank the canceled check in evidence, he claimed that the same had been drawn by the appellant without his mother's authority, knowledge, or consent, for which alleged offense he procured the appellant's indictment for forgery, as set out supra.

Upon appellant's trial under this indictment he pleaded not guilty and, testifying in his own behalf, stated that on April 11, 1924, Polly Caines came to his home on Big Creek in Pike county and requested him to draw the check in evidence upon her account in the Williamson bank for $500 and bring her back the money; that he had gone the next day to this bank at Williamson, where he had written the check in ink, as stated, when he was called by some one, which caused him to leave the bank without then cashing it; that he remained in Williamson a day, when he returned the next day to the bank to cash the check, where he did cash it and went home and delivered the $500, twenty-five $20 bills, paid him by the bank, to Polly Caines in the presence of three or four persons then present.

This check, stated by Literal to have been drawn in the bank by him on April 12, is submitted paid by the bank on April 16. When asked to explain why it was not paid him on the 12th when drawn, or on the following day, when he stated he had cashed it, he was unable to make any satisfactory explanation in support of his plea that he had then paid over to Polly Caines this $500 admitted drawn by him upon her account. Seeking to support the payment he produces a writing, which he claims was given him by her as a receipt for the $500, claimed paid her upon his return in the presence of several persons. This paper bears the date of April 17, 1924, and purports to have been signed by Polly Caines by her mark, and witnessed by one G. W. Burris, but it will be noted that this was four or five days after the date of the check as drawn by him, and two or three days after the day the appellant testifies he returned home and paid Polly Caines this money. The writing would also appear from its wording as in-

tended to authorize appellant to draw the check, while according to his evidence he had then previously on April 12, four or five days before the date of the receipt, drawn and cashed it and had paid her. In this connection it may be noted that this check had remained uncalled for in the possession of the bank since April, 1924, with its date of payment perhaps long forgotten, when this writing, offered as a receipt, was introduced upon Literal's trial nine years later.

In April, 1930, Polly Caines, by the witnesses termed "Aunt Polly," fell and injured her hip, as a result of which she was confined to her bed until the time of her death in April, 1932. At the time of her accident, the appellant called to see her. She asked him how her bank account stood and he replied, according to the commonwealth's evidence, that she then had $700 or more to her credit in the bank. Appellant, while admitting Aunt Polly's asking him this question, states, however, that his answer to it was that her bank account was all right. It is conclusively shown, however, by the record of the bank, that at the time of making this statement there was only about $170 remaining to her credit in the bank after deducting this $500 check drawn against her account.

Appellant further states that the check, with the forgery of which he is charged, was wholly drawn by him in Williamson in the state of West Virginia. On the other hand, Jim Caines, the commonwealth's witness, states that appellant told him on the evening of April 10, after his mother's burial, while discussing with him his mother's money matters in his hands, that she had come to his home on Big Creek in Pike county in April, 1924, and there made him write this check upon her account.

Appellant testifies also that the witness Jim Caines, "Aunt Polly's" son, told him that upon the occasion of his mother's injury in 1930 he was surprised to find upon her person some $20 bills in the amount of $350 or $400. This statement is positively denied by Jim Caines, who states that he did not find such or any amount upon his mother's person, and that he had not made any such statement to appellant.

It will thus be seen that the evidence upon the issues made upon the trial are in direct and strong conflict, both as to the question of appellant's guilt of hav-

ing forged the check and also, as to his guilt of having committed the charged offense of forging the check, if so he did, in Kentucky. However, the jury having found upon these issues against appellant, he seeks a reversal upon numerous assignments of error, most urgently insisting that the court erred in overruling demurrer to the indictment, and that the verdict is not sustained by the evidence. Also, some complaint is made upon the ground that the commonwealth failed to establish the incorporation and legal existence of the First National Bank of Williamson when the indictment alleges that the check was forged for the purpose of defrauding Polly Caines and the said National Bank. He claims that these allegations are material parts of the indictment, put in issue by the defendant's plea of not guilty, which thereby places the burden upon the commonwealth to prove the bank's incorporation as a material allegation of the indictment, and which it failed to do.

We do not, however, concur with appellant in this contention, as the real question ppresented by this indictment is not the legality of the incorporation of the Williamson Bank, but the guilt or innocence of the defendant. State v. McKiernan, 17 Nev. 224, 30 P. 831; 26 C. J. page 936, sec. 79; State v. Van Hart, 17 N. J. Law, 327. The indictment charging forgery with the intent to defraud a bank and an individual is not vitiated by the want of an averment of the bank's incorporation. 26 C. J. 936, sec. 79. Clearly, it would not be vitiated by the failure to prove its incorporation, where even its averment is not required. Gates v. State, 71 Miss. 874, 16 So. 342; State v. Washington, 259 Mo. 335, 168 S. W. 695; State v. Stgener, 276 Mo. 427, 207 S. W. 826. The false making with intent to defraud is the gist of the action. Commonwealth v. Ladd, 15 Mass. 526.

By section 1188, Kentucky Statutes, forgery is defined to be where "any person shall forge or counterfeit any writing whatever, whereby fraudulently to obtain the possession of or to deprive another of any money or property, or cause him to be injured in his estate or lawful rights. * * *" Mr. Blackstone defines forgery to be "the fraudulent making or alteration of a writing to the prejudice of another man's right." In Roberson's Criminal Law, sec. 785, it is said:

"Intent to defraud is an essential element of the crime of forgery, and is of the very gist of the offense. A false making of an instrument without such an intent will not suffice. If, therefore, one signs the name of another to an instrument, in the honest belief that he has authority to do so, it negatives the intent to defraud."

Also, forgery has been defined by this court as "the false making, or materially altering with intent to defraud, of any writing, which if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." Daniels v. Commonwealth, 181 Ky. 365, 205 S. W. 968, 969; Robinson v. Commonwealth, 217 Ky. 129, 288 S. W. 1044.

We will next consider the objection that the court was without jurisdiction of the offense, upon the ground claimed that the forgery occurred without the state. It may be conceded that the venue of an action would be in the state where same was committed. However, the rule of law is that evidence of venue need not exclude every reasonable doubt, for the reason that the venue is not an element of the crime. 26 C. J. 975, secs. 149 and 150; People v. McIntosh, 242 Ill. 602, 90 N. E. 180.

In the instant case there was evidence given by the commonwealth's witness, Jim Caines, tending to show that the appellant had written this check at his home in Pike county at the request of Polly Caines. Further, there was evidence afforded by the fact that the check showed upon its face that it was written in ink, by appellant April 12, 1924, which is admitted by him. According to the testimony of Jim Caines, appellant told him that his mother came to appellant's home and requested him to there write the check. Also, though the check was dated April 12, 1924, it was not paid by the bank in Williamson, according to its stamped date of payment, until April 16, when there and then indorsed with pencil by appellant. The jury may reasonably have considered that the check was not both written by appellant in ink and indorsed by him with a pencil at one and the same time, but that his indorsement of the check was later made upon his presenting it in West Virginia for payment and was subsequent to and later than his earlier writing of the check in ink, according to its date on April 12th, as otherwise both would have

been done either with pen or pencil if used upon one occasion.

The jury was instructed by the court that they must believe from the evidence in this case beyond a reasonable doubt that the defendant, W. S. Literal, in Pike county, willfully and feloniously signed the name of Polly Caines to the check for $500 without her knowledge, consent, or authority, and with the intention to perpetrate a fraud upon and cheat the said Polly Caines and the First National Bank of Williamson, or either of them, to find him guilty of the crime of forgery. It must be presumed in returning their verdict of guilty against him that they did from the evidence find that the appellant both forged the check in Pike county, and also that it was done by him without the knowledge or authority of Polly Caines, and with the intention to perpetrate a fraud upon her. There was here before the jury some evidence both that the check was written by the appellant in Pike county and also that it was written by the appellant upon Polly Caines' account without her knowledge, authority, or consent, and that same was done with the intent to cheat Polly Caines.

Such being our conclusion after a careful consideration of the close questions presented by the record upon this appeal, we are constrained to leave undisturbed the finding of the jury, and to refuse the directing of a new trial of the case upon appellant's insistence that the verdict is against the evidence. The evidence in this case heard by the jury, being in marked and positive conflict, the credibility and weight to be given the testimony of the various witnesses was the responsibility and problem of the jury. Branham v. Commonwealth, 223 Ky. 238, 3 S. W. (2d) 629; Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298. The evidence heard being in such striking conflict, the question as to which set of witnesses were telling the truth became peculiarly and exclusively one for the jury, and this court will not reverse its finding based upon its believing one set of witnesses rather than the other.

Such being our conclusion, we are not permitted to invade the province of the jury by ourselves deciding these questions of fact found and determined by it in its verdict. Therefore, the judgment is affirmed.