Nora Simons, Appellee, v. John L. Harris, Appellant.

No. 41420.

December 13, 1932.

D. N. Johnson and E. J. Dahms, for appellee.

Arthur Springer and J. G. Kammerer, for appellant.

De Graff, J.—The record briefly stated discloses the following facts. The plaintiff is a widow 49 years of age, and was employed at the time of the alleged slander as a domestic in the home of the defendant John L. Harris, who resided on a farm, as owner, in

Louisa County, Iowa. The family of the defendant consisted of himself, his invalid wife, and a farm hand, James C. Brown, a man of about 65 years of age. It is alleged that the plaintiff and defendant had a controversy, and during this verbal quarrel that the defendant called the plaintiff Nora Simons a "G— damn whore and everything but a decent woman." The plaintiff theretofore had lived on the Harris farm for two years. She had been married, but her husband was dead. The particular allegation of damage as stated in her petition is as follows:

"That on account of this slanderous statement so made by the said defendant verbally, maliciously, and before and in the presence of other persons, that plaintiff's character has been slandered and said slanderous words so spoken publicly of this plaintiff has tended to expose plaintiff to public hatred, contempt, ridicule, disgrace, and to induce an evil opinion of her in the minds of other right thinking and respectable people, and to deprive her of their friendly intercourse and society, and said slanderous defaming words so spoken, as aforesaid by said defendant, will tend to injure this plaintiff by making it difficult for her to get employment among decent and respectable people or in public places."

One James C. Brown was present when the alleged slanderous words were spoken of and concerning Nora Simons on or about November 13, 1930. Brown testified that he was a laborer, knew John Harris, and had worked on his farm and was shucking corn for him in October and November 1930. Brown testified that he was present in the Harris home about noon on the 13th day of November, 1930, the date in question. He testified that there was some trouble between Mrs. Simons and the defendant Harris. Mrs. Simons was in the house when Brown came in. The defendant Harris was also there, and he (Brown) heard Harris call Mrs. Simons a "God— damn dirty whore." The above words constituted the publication relied upon in the instant case.

After the verdict of $1,000 was returned, the defendant filed a motion for new trial, and as grounds therefor stated:

(1) That the verdict of the jury is excessive.

(2) That the verdict of the jury is contrary to the evidence and instructions of the court. (The abstract does not contain the instructions given to the jury or the requested instructions asked for by the defendant.)

(3) That the verdict of the jury is the result of passion and prejudice on their part and not in accordance with the evidence and instructions. (The abstract does not contain the evidence *in toto* introduced upon the trial.)

(4) That the verdict of the jury shows passion and 'prejudice, for the reason the actual damages that could have been sustained by plaintiff are but nominal.

(5) That the damages allowed by the jury in the sum of $1,000, in the light of the testimony and the instructions of the court, of necessity must be principally exemplary or punitive damages.

(6) That the actual damages and punitive damages allowed by the jury are disproportionate, and that the exemplary damages are largely in excess of the actual damages, as the said actual damages cannot be more than nominal.

(7) That it clearly appears in the evidence in this case that the plaintiff in no way sustained damages to her reputation, her society, or her ability to procure employment, but on the contrary she specifically testified that she suffered no such damages.

(8) That it clearly appears in the evidence in this case that there was no malice, for the reason that the defendant in using the alleged slanderous words was addressing the plaintiff, and not a third person, and the alleged slanderous words grew out of a heated conversation between the plaintiff and the defendant, and that no one heard such alleged slanderous words other than a co-employee, who was an old man who happened to be sitting by, waiting for his meals, and who heard nothing relative to the conversation or what was said, other than the alleged slanderous statement.

(9) Because of newly discovered evidence, as shown by the affidavit of John L. Vertrees, hereto attached, which affidavit fully sustains and corroborates the evidence given by the defendant on the trial as to the statements of the witness J. C. Brown; and as shown by the affidavit of the defendant hereto attached, this newly discovered evidence was wholly unknown to the defendant until after the trial; and the defendant, up to the time that the witness J. C. Brown testified, had no reason to believe that his testimony would be such as it was.

First, it may be said that there is no testimony in the record before us relating to mental pain and suffering resulting from the slander *per se* uttered to the plaintiff. This court must assume the

correctness of the abstract as having all necessary statements of the transcript in the lower court. A printed abstract of the record is assumed to contain the record unless denied and corrected by subsequent abstract. Palmer v. Clark, 114 Iowa 558.

In the second place, newly discovered evidence as set forth in the motion for new trial does not authorize a new trial if it is merely cumulative or of an impeaching character. There is no showing that due diligence was exercised by the defendant-appellant prior to the trial to discover the newly discovered evidence alleged in his motion for new trial. The overruling of such motion on the ground of newly discovered evidence is a matter that primarily rests in the sound discretion of the trial court, and should not be granted unless the newly discovered evidence will probably lead to a different result. Nelson v. Western Union Telegraph Co., 162 Iowa 50; Henderson v. Edwards, 191 Iowa 871, 16 A. L. R. 1090.

The language shown to have been used is slanderous *per se,* which means it is slanderous without proof of special damages. It is the function of the jury in cases of this kind to fix the amount of the verdict. Unless the verdict of the jury is so flagrantly excessive as to warrant a finding that the verdict is a result of passion or prejudice, the appellate court will not interfere with the verdict in a case of this character. The language shown to have been used by the defendant was slanderous *per se,* and with no plea of justification by the defendant. On this phase of the case we hold that a verdict of $1,000 was non-excessive. Stegemann v. Paulsen, 194 Iowa 1314; Hahn v. Lumpa, 158 Iowa 560. An innuendo was not required to explain the meaning intended to be conveyed to a hearer. Under such circumstances, substantial damages must be assumed from proof of the utterance of such slanderous words *per se.* The rule of nominal damages in such cases does not apply. (See the two foregoing decisions cited.)

As said by counsel for appellee in the case at bar:

"The most priceless thing that one possesses is his reputation, and it should be protected from the poisonous tongue of slander. Money damages [at best] is a poor compensatory equivalent for injury sustained by an unwarranted challenge that destroys or tends to destroy a person's standing in the social and business world." Stegemann v. Paulsen, supra.

The judgment of the trial court must be and is—Affirmed.

STEVENS, C. J., and EVANS, ALBERT, KINDIG, WAGNER, and MITCHELL, JJ., concur.