## MONROE SEINER V. STATE OF NEBRASKA.
### 292 N. W. 112

FILED MAY 17, 1940.  No. 30853.

*Donald O. Shurtleff*, for plaintiff in error.

*Walter R. Johnson, Attorney General*, and *Don Kelley, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

Plaintiff in error was tried and found guilty of forging and uttering certain bank drafts under section 28-601, Comp. St. 1929. Motion for new trial was overruled, and the court sentenced plaintiff in error to ten years in the penitentiary.

The principal assignments of error are: (1) The court,

in answering a question asked by a juror, stated that exhibits Nos. 1, 2, 3 and 4 (being the questioned bank drafts), were forgeries; (2) the court erred in denying plaintiff in error the right to make a sufficient cross-examination of Lewis E. Harris, the state's handwriting expert; (3) the court erred in overruling the motion for a new trial.

The facts are that during 1937 the plaintiff in error was in the state penitentiary, and his cellmate was Blanchard Beemer, who was a witness for the state in this case. Beemer testified that, while they were cellmates, shortly before he was to be released, he was told by Monroe Seiner to get some blank checks and a signature, and bring them over to Mr. Balis, who would bring them out to the penitentiary, and that Seiner would prepare forged ones, and then Balis would pass them. Beemer testified that he secured a genuine draft of $1.03 from E. W. Biggs & Co., a hide company at Fremont, by having a "floater" sell them a hide; then he broke into the office of E. W. Biggs & Co., stole some blank drafts, and the genuine draft and the blank drafts were delivered to Arthur Balis to be taken out to the penitentiary. The manager of the hide company, George Robinson, testified that the exhibits, Nos. 1, 2, 3, and 4, were all made from the blank drafts from the books of drafts which were stolen from the office, and that they were not signed by him, but he said "it was a good job because it looked like my signatures."

We now come to a consideration of the first error charged in this case, when the trial judge answered the question asked by one of the jurors: "Exhibits 1, 2, 3 and 4 received in evidence, shown to the jury, and the same are made part of this bill of exceptions and found on the pages immediately following. By the Court: (to the jury) You will have a chance, gentlemen, to examine these more at length later. Juror No. 4: These are forgeries we are looking at now? By the Court: As I understand now." Then, after a remark by an attorney, the court added: "They are described and charged upon in separate counts of the information."

The plaintiff in error contended, by his plea of not guilty,

that he had not signed the drafts in evidence. George Robinson, manager of the Fremont branch of E. W. Biggs & Co., of Kansas City, who was on the witness-stand at the time these exhibits were introduced, had testified that he did not sign them.

It cannot be denied that it is improper for a trial court to express to a jury its opinion regarding one of the facts in issue. *Goldman v. State*, 128 Neb. 684, 260 N. W. 373. This is because jurors are usually alert to discover the attitude of the court respecting the merits of the case, and this is particularly true in criminal cases. *Bowman v. State*, 19 Neb. 523, 28 N. W. 1; *Kraus v. State*, 102 Neb. 690, 169 N. W. 3.

The two statements of Judge Shepherd, taken together, indicated to the jury that they were looking at the drafts described in, and claimed to be forged in, the information. The statement made by the court on the spur of the moment, in response to the inquiry of a juror, is strenuously objected to as an improper statement for the court to have made.

If the statement is erroneous, the attorney for plaintiff in error should have taken advantage of it by at once entering a proper objection, but the record is entirely silent, no objection having been made, at the time when it should have been made, to establish the contention, neither was any mention of it made in the motion for a new trial, and the first time that objection is made to these statements of Judge Shepherd is to be found in the petition in error.

It is due to the lower court that its errors, if any, be promptly pointed out, so that it may immediately retrace its steps while the record is yet under its control and the jury are present. *Horbach v. Miller*, 4 Neb. 31. It is our conclusion that, if counsel did not object to the remark of the court at the time it was made, it is too late to complain about it now in this court.

The present attorney for plaintiff in error now says that Attorney Charles Ledwith, the attorney for plaintiff in error during the trial, just could not object at the time, for it would have deeply offended the juror who asked the ques-

tion. A sufficient answer to that is that he could have quietly dictated an objection into the record, out of the hearing of the jury, and preserved all his rights in the matter.

The judge should, during the course of a trial, refrain from remarks that are calculated in any way to influence the jury. If material remarks are made by the court, they may under some conditions be prejudicial. Some states have statutes under which it is error for the trial court to express an opinion as to a fact in issue, which a judge is allowed to do in a federal court.

"It is the general rule that prejudicial remarks in the course of a trial made by the court must be seasonably objected to and an exception noted in order to save the question for review." 26 R. C. L. 1030, sec. 31. See, also, *Pelton v. Spider Lake Sawmill & Lumber Co.*, 132 Wis. 219, 112 N. W. 29, 122 Am. St. Rep. 963, Ann.; *State v. Tully*, 31 Mont. 365, 78 Pac. 760, 3 Ann. Cas. 824.

We doubt if the language used by the experienced trial judge was understood by the jury to be more than an identification of the exhibits with those described in the information. In any event, timely objection was not made.

Let us now examine the second objection urged for a reversal, which is, that the court erred in denying the counsel for plaintiff in error the right to make a sufficient cross-examination of Lewis E. Harris. Upon examination by Mr. Farley Young, Harris stated that he was a chemist and scientific criminologist, including six years' study as a handwriting expert. He gave one answer, six pages long, describing the handwriting on the exhibits Nos. 1, 2, 3 and 4, alleged to be forged. His entire direct examination is found in 12 pages, while Mr. Ledwith's cross-examination occupies 57 pages, the entire bill of exceptions being but 198 pages in length. Upon this record, it is charged in the motion for new trial that the court erred in denying the right to make a sufficient cross-examination of Lewis E. Harris.

The term "cross-examination" does not strictly import anything more than a leading and searching inquiry of the witness for further disclosure touching the particular mat-

ters detailed by him in his examination into other facts touching the merit of the cause.

The importance of the right of full cross-examination can scarcely be overestimated, and this court has said: "When testimony is given by a witness on direct examination, from which an inference of fact arises favorable to the party producing him, anything within the knowledge of the witness tending to rebut that inference is admissible on cross-examination, and the opposing party is entitled to pursue that line of cross-examination as a matter of right." *Larson v. Hafer*, 105 Neb. 257, 179 N. W. 1013.

"But there is never a cause contested, the result of which is not mainly dependent upon the skill with which the advocate conducts his cross-examination." Wellman, Art of Cross-Examination, 1.

"Questions calling for evidence tending to show the improbability of, or to throw doubt upon, statements made in the examination in chief are proper upon cross-examination, especially where such statements were in the nature of expert opinions." *Schrandt v. Young*, 62 Neb. 254, 86 N. W. 1085.

But, while the widest latitude compatible with the law of evidence is allowable upon cross-examination, the court may still impose reasonable restrictions.

A wide latitude is to be extended to defendant's counsel in cross-examination, but there is a limit beyond which court will not permit counsel to go. *State v. Pippi*, 59 Mont. 116, 195 Pac. 556.

Under pretense of cross-examination of a witness, one party to an action cannot make out his case by witnesses for the other side, by bringing out evidence not brought out on direct examination. *State v. Smith*, 57 Mont. 349, 188 Pac. 644; *Vonault v. O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535; *Roy v. Clark*, 215 Pac. (Mont.) 232; *State v. McConville*, 64 Mont. 302, 209 Pac. 987.

Cross-examination should be in conformity with well-recognized rules of evidence, have a reasonable limit as to nature of inquiry, and tend to throw light upon witness'

attitude upon the subject under investigation.  Therefore, it is a general rule, with some qualifications, that a witness, other than a party, may only be cross-examined on matters and facts upon which he has been examined in chief, and upon such matters as are likely to affect his credibility, test his memory or knowledge, show his relations to parties or cause, his bias, or the like. *Panitz v. Webb,* 149 Md. 75, 130 Atl. 913; *State v. Stegner,* 276 Mo. 427, 207 S. W. 826; *Sturm v. Sturm,* 111 N. J. Eq. 579, 163 Atl. 5.

In the light of these rules, let us briefly review the situation in the case at bar.

The direct examination of Harris had taken 12 pages; Mr. Ledwith first cross-examined him as to definite letters and points for some 24 pages, and then asked the expert to make comparisons between the writing on the questioned drafts and other exhibits, including one written in the courtroom by George Robinson, manager of the Fremont branch. Mr. Harris. said it would take him two days in his office, with instruments of various kinds, to make the desired comparisons.

Thereupon, Judge Shepherd said he could be excused for half a day to make the examination.  Mr. Young: "I think he can get something done in a half day.  By the Court: Stand down for the present, then.  Exception."  By the witness: "Yes, sir; and it will take two days time.  I never give an opinion in less period than that.  By the Court: No use doing— (interrupted).  Mr. Ledwith: No use doing that. * * * By the Court: Let's have the question you want answered.  Exception."  Thereupon Mr. Ledwith continued his cross-examination of the witness, securing his offhand opinion on individual points, like the "o" in "Geo." and the initial "T" and both small "j" and capital "J," and continued to cross-examine this expert for 15 pages more as to certain letters, and, as Mr. Ledwith stated, he had exhausted all of the possibilities of comparison with the naked eye.

The witness was then excused at 10:30 a. m., and another expert witness was called, and at 2:00 p. m. the handwrit-

ing expert, Lewis E. Harris, was recalled to the stand for further cross-examination by Mr. Ledwith, and stated that he had taken exhibits Nos. 1, 2, 3, 4, 14 and 18 and had examined the terminal letter "d" in the six exhibits, telling the power of the microscope, and being cross-examined for 13 pages more, there being no further demand at the close of the evidence by Mr. Ledwith for any further study, and immediately upon Mr. Ledwith telling the witness, "That is all," the state rested, and the defense thereupon rested, calling no witnesses, and the arguments were made to the jury.

From this minute examination of the record made on cross-examination, we have reached the conclusion that a very wide latitude was allowed by the court, that further cross-examination would have unduly taken up the time of the court and jury, and have been largely repetition of matters already covered several times.

· In such cases the extent of the cross-examination is committed to the sound discretion of the trial judge, who in the case at bar allowed the expert to be excused for nearly half a day to go to his office to make examinations of a very few words and letters appearing on the six small exhibits.

We have reached the conclusion that the trial judge did not err, and that any further delay of the trial would not have been warranted under the circumstances of this case.

AFFIRMED.