NORMA JEANNE JACOBSEN, appellant, v. ANTON HALA, appellee.

No. 51037.

(Reported in 125 N.W.2d 500)

NOVEMBER 12, 1963.

Duffield, Pinegar & Tapscott, of Des Moines, Ernest W. Wilcke, of Spirit Lake, and Donald B. Kliebenstein, of Gladbrook, for appellant.

Cartwright, Druker, Ryden & Fagg, of Marshalltown, and Mickelson & Roan, of Toledo, for appellee.

PETERSON, J.—This is an action brought by plaintiff to recover damages for personal injuries allegedly caused by the negligence of defendant in operating his motor vehicle on a slick, snow-covered gravel road in Tama County. Plaintiff alleges he operated it in such a manner that it collided with the rear end of plaintiff's vehicle causing serious bodily injury. Defendant denied any negligence and denied plaintiff was free from contributory negligence. The jury returned a verdict for defendant. Plaintiff appealed.

Plaintiff makes assignment of five alleged errors in connection with the trial of the case: 1. In ruling on evidence pertaining to what plaintiff alleges to be cross-examination by defendant's counsel of defendant. 2. Sustaining defendant's objection to plaintiff's Exhibit AO, a photograph of defendant's car taken after the accident. 3. In not instructing the jury that defendant was guilty of negligence as a matter of law. 4. In giving instruction 24 to the jury with reference to the slow travel of plaintiff's car. 5. In overruling plaintiff's motion for new trial based on newly discovered evidence.

I. Plaintiff is a forty-year-old housewife, the mother of three children, and also a registered nurse working part time.

She lived with her husband at the time of the accident on a farm on what is known as Gilman Road which farm was located approximately 7½ miles southwest of Tama.

March 10, 1959, plaintiff was taking her twin girls to school, and her little girl to a neighbor's home for the day on her way to work at the hospital. The schoolhouse was located on Gilman Road some distance west of the Jacobsen home. After she left her two little girls at the school she proceeded easterly on Gilman Road to the home of the neighbor to leave the little girl and then on easterly to highway 63 leading into the city of Tama. The road is graveled, 26 feet wide and located about seven miles south of Tama. From a point about 1840 feet west of highway 63 there is a gradual rise going east to a point close to highway 63.

The night before the accident there had been a snow, and the day before it had been thawing, so that the ground was somewhat soft. The snow had been heavy during the winter and the road was blocked with drifts in some places. In places the maintainer had pushed the snow back so that it was as high as a car and most of the distance it was one-way traffic.

On the morning of the collision there was considerable fog in places. As plaintiff proceeded east from the schoolhouse toward highway 63 she found a short distance where the road is level and then it starts up the hill.

Plaintiff testified when she was about seven or eight hundred feet from the crest of the hill defendant came over the top of the hill and proceeded down the hill towards her. She states she stopped because she could not pass defendant on the one-way road and she backed down to where it was level. The defendant, Mr. Hala, with his little girl in his car, passed her, driving west toward the schoolhouse.

Plaintiff then proceeded easterly again driving up the hill over the one-way traffic road. When she had proceeded part way up the hill her little girl said: " 'Mama, here comes a car fast'." Simultaneously with the little girl's expression Mr. Hala's car struck the rear end of plaintiff's car. Mr. Hala's testimony concerning the collision was as follows:

"Q. Anton, did you observe the car that you saw ahead of

you as to whether it was moving? A. Yes, it was.

"Q. And in what direction was it moving? A. Backward toward me.

"Q. Did it have any lights on, Anton? A. No.

"Q. When you saw that car, was it also in the fog? A. Yes, sir.

"Q. How fast were you driving before you came into the fog? A. I didn't observe the speedometer, but I assume in that speed and someplace, 30 to 35 miles an hour."

There was considerable damage caused to the rear end of plaintiff's car and also to the front end of defendant's car.

Plaintiff denied she was backing her car down hill at the time defendant's car struck her. She contended she was proceeding easterly up the hill at all times. After the collision both parties went to the home of Mr. and Mrs. Russell Huston near the point of collision. They called the sheriff's office and a deputy sheriff came out to make a report on the collision. Plaintiff called her insurance agent and he came out and prepared a report to his company, to which we will refer later.

II. Plaintiff contends the court committed error in permitting defendant's counsel to ask certain questions of defendant when he was on the witness stand. We will state the examination to which plaintiff's counsel objects. Mr. Hala testified:

"The first thing I observed was the outline of a back window of Mrs. Jacobsen's—or I mean a car—outline of that window, how the lights were shining on it. I guess it must have reflected back to me. That is the first thing I observed. So I stepped on the brakes and skidded. And, of course, that was that quick. I made some inspection afterwards to determine about how far my wheels had slid and where they slid it was all mixed ice and snow and packed-down snow and slippery.

"Q. Did you make an effort to turn to the right or the left before your car ran into her car? A. No, I didn't.

"Q. Why not? A. Because them tracks were just like troughs. I estimate that I slid between 30 and 35 feet after I applied the brakes. * * * I can't tell you how fast I was going when I struck her car. I wouldn't know whether the cars moved after impact.

"Q. Well, did they or did they not?

"Mr. Duffield: I believe I would have to object to this as cross-examination of his own witness, the witness having already testified that he wouldn't know.

"Mr. Druker: Q. What do you mean by 'I don't know'?

"Mr. Duffield: I object to that as a type of cross-examination of his own witness.

"The Court: Let him answer.

"Mr. Druker: Q. Go ahead. A. No, they didn't.

"Mr. Duffield: I move to strike that as having been in response to cross-examination of his own witness after proper objection was made to an attempt to cross-examine his own witness.

"The Court: Overruled."

We said in Baker v. Roberts & Beier, 209 Iowa 290, 292, 228 N.W. 9: "The rule is too well settled to require discussion that a party to an action may not impeach his own witnesses."

However, the question involved in the case is whether the discussion as above outlined was cross-examination by defendant's counsel of his own witness.

Cross-examination is defined as a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his direct examination, tending to show the improbability of, or to throw doubt upon, statements made by the witness. Seiner v. State, 138 Neb. 130, 292 N.W. 112. It has been properly stated that explanation of an answer by one's own witness does not constitute cross-examination. 98 C. J. S., Witnesses, section 368. In Note 1 of footnote 79 of the section appears the following: "Defense counsel's inquiry on direct examination, as to what witness meant by answer, did not constitute cross-examination of his own witness."

On consideration of appellant's claim, it really was directed only to the propriety of the question "What do you mean by 'I don't know'?" The answer of defendant was "No they didn't."

It is evident that the colloquy referred to above was not cross-examination. It simply asked for an explanation of defendant's immediately preceding answer. Referring to the citation as to 98 C. J. S., supra, this was not cross-examination. The

question was not an attempt on the part of defendant's counsel to impeach his own witness, but rather an attempt to clarify his answer.

At any rate, plaintiff did not suffer any prejudice from these minor questions and answers. They had no bearing or effect upon the important issues in the case.

III. Error is alleged in that the trial court refused to admit a certain photograph known as plaintiff's Exhibit A O in evidence.

The photograph in question was a picture taken of the front end of defendant's car.

The admissibility of photographs is largely within the discretion of the trial court. The court has the opportunity of examining the photographs and hear the evidence given by the witness who is identifying the photograph and describing what it shows or does not show. Hansen v. Franklin County, 247 Iowa 1287, 78 N.W.2d 805; Gose v. True, 197 Iowa 1094, 1098, 198 N.W. 528; Nolte v. Chicago, R. I. & P. Ry. Co., 165 Iowa 721, 147 N.W. 192; Ingebretsen v. Minneapolis & St. Louis R. Co., 176 Iowa 74, 83, 155 N.W. 327, 330.

In the case of Gose v. True, supra, we quoted from the Nolte case as follows: "The admission or rejection of a photograph in evidence is a matter addressed to the sound discretion of the court; and in the absence of an abuse of such discretion, the court's ruling will not be disturbed on appeal."

In the case of Hansen v. Franklin County, supra, page 1291 of 247 Iowa, this court stated as to whether photographs are to be admitted or excluded, "plaintiff concedes that the general rule is that the admissibility of [his] photographs is within the fair discretion of the trial court."

In the Ingebretsen case we said at page 83 of 176 Iowa: "Whether photographs are to be admitted or excluded is a question very largely, if not entirely, in the discretion of the court, and this is more emphatically the case where, as we have said, they are intended to perform the office of an illustration or diagram in aid of oral or written testimony, rather than as being, in themselves, independent evidence."

In the case at bar the defendant had testified that after

the accident it appeared the motor was not hurt. The radiator was dented in the middle a little. The antifreeze did not leak out. The headlights on the fenders were broken; both of them. The fenders were pushed back on the car to where they come up to the front door. The fenders were not reparable. The front grill was broken.

It clearly appears from the testimony with reference to Exhibit AO it was not a photograph which had been taken for the defendant. It also appears from the photograph that a part of the front of the car was missing, which was not the condition of the car immediately after the accident. Mr. Hala had a right to explain that a part of the front of the car was missing and when he did so explain defendant's counsel objected to its admission and the court sustained the objection.

We find no other evidence in the record with reference to the photograph, Exhibit AO. No witness came forward to identify the photograph and defendant's evidence as to the absence of a part of the front of the car stands undenied.

"The Court: It appears from the witness it is not a fair representation of the car as it looked after the accident and at the present time I am going to sustain the objection. I may reverse myself on that."

IV. It is plaintiff's contention that the court should have instructed as a matter of law that defendant violated Code section 321.285, which is known as the "Assured Clear Distance Ahead Statute."

It is very rarely that a plaintiff, having the burden to prove negligence, is entitled to such an instruction. Davis v. Knight, 239 Iowa 1338, 35 N.W.2d 23; LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 11 N.W.2d 36; Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470.

The duty imposed upon a motorist by section 321.285 is to be able to stop within the assured clear distance ahead, but is not absolute, since, under the statute as amended, he has "the right to assume * * * that all persons using said highway will observe the law." Where a motorist while in the exercise of ordinary care unexpectedly comes upon a vehicle of which he is unaware and which is not lighted as required by law, and there-

after exercises care in an attempt to avoid striking the vehicle, he is not to be held guilty of negligence as a matter of law in colliding with such vehicle, and the question of negligence is one for the jury. Central States Electric Co. v. McVay, 232 Iowa 469, 5 N.W.2d 817; Tuhn v. Clark, 241 Iowa 441, 41 N.W.2d 13, 15 A. L. R.2d 903; Bunch v. Hanson, 251 Iowa 1097, 104 N.W.2d 581.

Plaintiff does not cite any authority from this state in which the jury was directed as a matter of law to find defendant negligent in a damage case such as the one at bar. It is an extreme rarity and almost unheard of that courts take from the juries questions of fact on the motion of the party having the burden of proof.

When the clause was added to section 321.285 by the legislature with reference to a driver assuming that all persons using the highway will obey the law a change was made in the scope of the clause "Assured Clear Distance Ahead".

■ Prior to passage of the amendment it had been held one could not escape the consequences of rear-end collisions by relying upon the other driver obeying the law. After the passage courts have consistently held it is a question for the jury. See Central States Electric Co. v. McVay, supra. There is decisive conflict in the evidence of plaintiff and defendant as to what happened in connection with the collision. Plaintiff testified she was proceeding easterly up the hill very slowly. Defendant testified that for some reason plaintiff was backing her car down the hill when he first saw her and then because of the icy and snowy condition of the road he was not able to stop and ran into her. Under such conditions the facts were clearly a question for decision by the jury.

We hold no error was committed by the trial court in failing to instruct the jury in the manner requested by appellant.

■ V. Appellant assigns as error that portion of instruction 24 given to the jury as follows: "If you should find from the evidence that under the conditions then existing plaintiff was driving her vehicle at a speed that was less than reasonable and proper under the conditions then existing, the same would constitute contributory negligence if it in any manner or to any

degree contributed to the injury and damage complained of."

Mrs. Jacobsen testified as to the slowness of her speed as follows:

"Q. In your judgment right now, you can't tell whether you were going 10 or 20 miles an hour that day at the time of this impact? A. I wouldn't say that I was going 20 miles an hour. I don't believe that I was going that fast.

"Q. Would you differ with anyone who would estimate that you were going 10 miles an hour? A. I wouldn't argue with them, sir, no."

With reference to the question of instruction as to a slow moving vehicle Code section 321.285 provides: "Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than *nor less* than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, * * *." (Emphasis supplied.)

Code section 321.294 states in part as follows: "No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

A trial court is justified in giving an instruction as to evidence of speed even if such evidence is conflicting. Pierce v. Heusinkveld, 234 Iowa 1348, 14 N.W.2d 275; Lee v. Conrad, 140 Iowa 16, 117 N.W. 1096.

As a matter of evidence as to possible contributory negligence on the part of plaintiff it was permissible that the court give instruction 24. 60 C. J. S., Motor Vehicles, section 290, page 685; Annotation, 66 A. L. R.2d 1194; Lee v. Smith, 253 Minn. 401, 92 N.W.2d 117; Szost v. Dykman, 252 Mich. 151, 233 N.W. 203.

In 60 C. J. S., Motor Vehicles, supra, it is stated: "Unreasonably slow speed may constitute negligence under a statute requiring a driver to drive at a careful and prudent speed not greater than or less than is reasonable and proper." These are the words used in Iowa Code section 321.285. In addition to the testimony of plaintiff as to the slowness of the movement of her

vehicle there is other evidence from which the jury could make a computation as to such slowness of travel. From the point where defendant passed plaintiff going west to the schoolhouse to the point of the collision, which happened afterwards, the distance was approximately 500 feet. During the time plaintiff drove such 500 feet, defendant traveled to the schoolhouse and let out his little girl and returned to the point of accident, which was a distance of approximately one mile. In other words, defendant was traveling one mile at his stated speed of 30 to 35 miles an hour while plaintiff was traveling 500 feet or a distance of about one tenth of one mile. The jury could have computed that under such circumstances plaintiff was only traveling two or three miles an hour.

In the case of Lee v. Conrad, supra, we said at page 21 of 140 Iowa: "The issues with reference to which the instruction was given appeared in the testimony, and that was enough to justify an instruction by the court."

In the case of Lafferty v. Wattle, Mo. App., 349 S.W.2d 519, the defendant was driving his truck at a speed of 45 miles per hour on a level paved highway at a place where there was no apparent reason to slow down. The defendant sharply reduced his speed within a short distance to almost a rolling stop for a hitchhiker to jump aboard the truck. The defendant did not give any warning of his intention to slacken his speed, and the plaintiff struck the rear end of defendant's truck. Held, that the trial court properly submitted the issue as to violation of the slow-speed statute.

In Szost v. Dykman, supra, the plaintiff was about to enter an intersection when defendant was observed a considerable distance away. The plaintiff proceeded to enter the intersection at five miles per hour without further lookout. Defendant failed to see plaintiff's car until she struck it. The trial court submitted the issue of plaintiff's slow speed to the jury. On the matter of plaintiff's speed, the court pointed out that an unreasonably slow speed as well as an unreasonably rapid speed may constitute negligence.

It is true the matter of the happening of the collision raises a definite point of conflict in the evidence of the two parties,

which was for the jury to settle. Plaintiff claims she was proceeding slowly up the hill. Defendant claims she was backing up. However, if she was proceeding slowly up the hill it was logical, proper and in order that the trial court should give instruction 24 in the form in which it was given. This is especially true in view of the provisions of statute with reference to the matter of slow driving.

VI. Appellant assigned as error the ruling of the trial court denying a new trial on the basis of "newly discovered evidence."

The facts are that on the day of the collision Mrs. Jacobsen called the agent of her liability insurance company, Dale Mason, out to the Huston farmhouse to which all the parties had gone after the accident occurred. Present were Mrs. Jacobsen and Mr. Hala; Mr. Quigley, deputy sheriff; Dale Mason; and Mrs. Huston most of the time.

In the discussion about the accident Mrs. Jacobsen told her insurance agent, Mr. Mason, that she was driving up the hill in an easterly direction when Mr. Hala's car struck the rear end of her car. Mr. Hala had testified that when he struck her car she was backing up. Mr. Mason filed an affidavit that when Mrs. Jacobsen said in the conference in the Huston home that she was driving in an easterly direction when Mr. Hala struck her, there was no disagreement of such statement voiced by Mr. Hala. In other words, the testimony that Mr. Mason would give in a new trial would be further impeachment of Mr. Hala's testimony. Mrs. Jacobsen had radically disagreed with such testimony in the trial of the case.

The trial court has wide discretion in the granting of a new trial on the ground of newly discovered evidence and such ruling will not be disturbed unless the court's discretion has been abused. Lovrien v. Rowe, 251 Iowa 453, 100 N.W.2d 166; DeWitt v. Larson, 185 Iowa 1138, 171 N.W. 681; Simons v. Harris, 215 Iowa 479, 245 N.W. 875; 66 C. J. S., New Trial, section 101. The statement in 66 C. J. S., supra, is a good composite statement of the general holding with reference to said question: "Cases which require the granting of a new trial on the ground of newly discovered evidence are unusual and

exceptional. Applications for such relief are looked on with distrust and disfavor, and must be granted with caution; and the newly discovered evidence is regarded with suspicion."

A motion for new trial based upon newly discovered evidence must be supported by a showing that the claimed new evidence could not, with reasonable diligence, have been discovered and produced at the trial. Rule 244(g), Rules of Civil Procedure; Danner v. Cooper, 215 Iowa 1354, 1360, 246 N.W. 223, 226; 66 C. J. S., New Trial, section 104.

Mrs. Jacobsen testified she knew and told her attorneys about Mr. Mason's presence when Mr. Hala failed to object to her account of her car at all times proceeding easterly.

One rule is that the test is whether the newly discovered evidence is likely to produce a different result; and this applies even to cumulative evidence. Westergard v. Des Moines Ry. Co., 243 Iowa 495, 500, 501, 52 N.W.2d 39; Groves v. Groves, 248 Iowa 682, 698, 82 N.W.2d 124. This would not happen in this case as Mrs. Jacobsen had testified at the trial what Mason stated in his affidavit he would say on a new trial.

The order of the trial court denying a new trial is sustained by both the facts and the law.

The case is—Affirmed.

All JUSTICES concur.