NORMAN HACKNEY, plaintiff, v. MICHAEL TOWER et al., defendants.

MICHAEL TOWER et al., counterclaimants, v. NORMAN HACKNEY, counterclaim-defendant.

No. 52550.

(Reported in 152 N.W.2d 257)

1102

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■

JULY 11, 1967.

■■■■■■■■■■■■■■■■■■■

■■■■■■ ■■■■

James W. Crawford and Gene V. Kellenberger, both of Cedar Rapids, for appellant.

Ben Morris, of Tama, for appellees.

BECKER, J.—This is a rear-end collision case involving two trucks traveling in the same direction. Plaintiff-owner of the preceding truck sued defendant-driver and defendant-owner of the following truck. Defendants counterclaimed. The matter was tried to the court without a jury. The trial court found for defendants counterclaimants and awarded damages based on the counterclaim. We affirm.

Gordon Warren was operating plaintiff Hackney's truck. Defendant Tower was operating defendant Suchanek's truck. For convenience the parties will be referred to as plaintiff on the one side and defendants or counterclaimants on the other side. Both parties were operating heavily loaded gravel trucks along a gravel county road that was described as dry, dusty and hilly. The dust obscured visibility to some extent and the additional dust raised by the trucks further restricted vision.

The facts involved a third truck operated by William Taylor. All three trucks were hauling gravel from two different quarries to a cement mixing plant some 25 miles away. They had been hauling all day when the collision occurred about 4 p.m. All trucks were headed south. Taylor entered the gravel county road in front of the plaintiff's and defendants' trucks

which had entered the road from the other quarry. Taylor's truck was passed by plaintiff. The trucks proceeded south, plaintiff in front, Taylor some distance behind him and defendant in the rear. There was evidence that the trucks were running from 30 to 50 miles an hour at different times. Each driver testified that he knew of the presence of the other two trucks that were traveling in the same direction. They had all made numerous trips over the route.

In the hilly terrain there were two hills immediately involved. Plaintiff driver testified he topped the first hill, drove down into a valley and over the crest of a smaller but steeper hill. As he got over the crest of the second hill, plaintiff's hood latch broke. The right side of the hood flew up obscuring his visibility to the right. He could see ahead but could not see the ditch to the right. He said he immediately slowed down to about 10 miles per hour.

Taylor, driving truck No. 2, topped the crest traveling about 50 miles per hour, came into a heavy cloud of dust caused by plaintiff's truck, saw plaintiff's truck which he said was then stopped or almost stopped, jerked his truck to the left and went around plaintiff's truck. He heard a crash, pulled into a driveway and went back to the scene of the collision.

Defendant testified that he was following the other two trucks and knew that they were ahead of him by the dust clouds they made. He approached the top of the second grade at 30 to 40 miles an hour. He then testified, "As I reached the crest of the second hill, the dust became very, very thick, and I didn't know why. I thought maybe something was wrong but I couldn't see a thing. And, so I immediately applied the brakes to my vehicle and tried to stop. * * * After I reached the crest of the second hill, my opinion as to the range of my visibility was almost zero." When he slammed on his brakes the wheels skidded. After he had his brakes on defendant saw plaintiff's truck ahead. He tried to turn left but could not do that with the wheels skidding. The right front of defendant's truck hit the left rear of plaintiff's truck.

The highway patrolmen established that the road was 26 feet wide. Defendant testified that he measured the road and

found it to be 31 feet wide. There is no dispute that at time of impact both trucks were in the traveled portion of the road on the right-hand side.

After the case had been submitted defendants were allowed to amend their counterclaim to charge: "That he [plaintiff's driver] was negligent in materially reducing the speed of the motor vehicle he was operating when he knew that there were other motor vehicles behind him, including the defendants', and so close that such reducing of speed would likely result in a collision." It was on this specification that the court found for counterclaimants.

The trial judge made a careful analysis of both the facts and the law. He found as a fact: "Warren had abruptly reduced the speed of his vehicle, but had not brought it to a complete stop and it was still moving forward very slowly when the collision occurred, much less than the ten miles per hour he testified to." He then concluded that plaintiff could not recover because the proximate cause of the accident was Warren's negligence. As to the counterclaim he stated in part: "Warren's act of driving at only a few miles an hour for some distance, with the dense cloud of dust immediately behind him, was negligence, under the specification pleaded in the Amendment to Counterclaim, and such negligence was a proximate cause of the collision." As to counterclaimant's contributory negligence he held that Tower was exercising due care when he drove over the crest of the hill, that he was then confronted with a sudden emergency not of his own making: "He did the only thing he could do for his protection—immediately applied his brakes very hard. Traveling 150 feet in the dust, he saw the Warren truck, only 20 feet ahead, and then he tried to turn to the left, because the ditch on the right was too deep, but because of his braking, the truck did not respond to his efforts to turn, and he struck the left rear of plaintiff's truck. There is no intimation in the evidence of anything that he should or could have done better for his protection. He did what a reasonably careful person would have done when confronted by a similar sudden emergency. He has proved his freedom from contributory negligence."

■ I. Plaintiff's first assignment of error is that the court erred in finding plaintiff guilty of negligence. Many points in the foregoing recitation of facts were contested. As stated in Cronk v. Iowa Power and Light Co., 258 Iowa 603, 606, 138 N.W.2d 843, 844: "The evidence will be viewed in the light most favorable to plaintiff—this is also the light most favorable to the trial court's judgment. Its findings of fact have the effect of a special verdict and are binding upon us if supported by substantial evidence. Citation of authority is unnecessary. Rule 344(f)1, Rules of Civil Procedure. Our question is whether the trial court's findings are supported by substantial evidence, and we will not weigh the evidence or the credibility of the witness."

■ Plaintiff contends that defendant was driving under poor visibility conditions due to dust, when the hood latch broke and the right half of the hood raised his visibility was further restricted, that at that time plaintiff's driver did what the law required him to do, he slowed down preparatory to stopping to fix the hood. However, Taylor said the visibility ahead of plaintiff's truck when he passed it was good and plaintiff's driver testified: "I could see to the left of me but I couldn't see to the right. I was looking for a place to pull off the road so I could get it fixed. It didn't impair my vision sufficiently so I felt I had to come to a stop right then and there."

In this regard the trial court found: "In so driving, Warren created a hazard to vehicles which he knew were following him. The minor occurrence which led him to so act does not qualify as an emergency because such an abrupt deceleration was not necessary. His own testimony establishes that the breaking of the hood latch did not interfere with his visibility and did not endanger the safe operation of his vehicle. He could safely have driven ahead to some place where he could drive off the highway before stopping."

In this division of his brief plaintiff places principal reliance on Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82, 87 (1957); Lukin v. Marvel, 219 Iowa 773, 781, 259 N.W. 782 (1935) and Winter v. Davis, 217 Iowa 424, 251 N.W. 770 (1933).

We do not find the cases factually similar. In Jesse v. Wemer & Wemer Co., supra, defendant slowed or stopped his truck to allow another truck to go through a narrow underpass. In commenting on the language used in that case we later said in Pinckney v. Watkinson, 254 Iowa 144, 153, 116 N.W.2d 258:

"All voluntary stopping of a vehicle which amounts to parking or leaving a vehicle standing, attended or otherwise, with the exceptions stated therein, is prohibited by the statute. It may be true our pronouncement as to the requirement of 'stopping' under this statute gives the impression all such momentary stops are excusable, but such was not our intention and such is not the law. Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1007, 1008, 82 N.W.2d 82; 43 Iowa Law Review 401.

"In the Wemer case we did say that the statutory prohibition did not contemplate and did not intend to include a 'stop' upon the highway where it is hazardous to proceed, or where the stop is made in response to a traffic command, or where the stop is made in the exercise of due care under the circumstances. See article in 43 Iowa Law Review 401–404, and citations."

Here, as in Pinckney, the question of whether the stop or radical slowing was done in the exercise of due care was for the trier of the facts.

In Jacobsen v. Hala, 255 Iowa 918, 927, 125 N.W.2d 500, we quoted C. J. S. with approval: "In 60 C. J. S., Motor Vehicles, supra, it is stated: 'Unreasonably slow speed may constitute negligence under a statute requiring a driver to drive at a careful and prudent speed not greater than nor less than is reasonable and proper.' These are the words used in Iowa Code section 321.285."

With these legal propositions settled the matter becomes one of fact and is so argued by both sides. We agree with plaintiff that the presence or absence of signals by plaintiff were immaterial and the trial court so held. Plaintiff's truck was raising so much dust that signals were not visible from the rear in any event. But plaintiff's driver must be held to have known this. He said that the dust obscured vision behind him. He also knew that there were two trucks following him in fairly close proximity. Under these circumstances the reasonableness of his

abrupt slowing or stopping was a question for the trier of the facts. A review of the record indicates substantial evidence to support the court's conclusion.

II. We also think that there was substantial support for the court's conclusion that defendant counterclaimants' driver was free from contributory negligence. When Tower topped the crest of hill two and suddenly came on the cloud of dust he said he immediately applied his brakes hard enough to skid the wheels. He was confronted with the dust of two trucks and could not see plaintiff's truck until it was too late.

Except for the fact that the cause of zero visibility was snow rather than dust and the situation was due to unusual weather conditions rather than the operation of the preceding motor vehicle Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 138 N.W.2d 93, 10 A. L. R.3d 247 is similar to this case in many respects. There the drivers encountered "a wall of snow", here the two following drivers encountered a wall of dust. The distinguishing factor is that here plaintiff's driver was on the other side of that wall and, under the court's findings, had sufficient visibility that the sudden slowing was neither necessary nor reasonable. In the interest of space we do not repeat what is said in the Oakes case but find that the principles noted at pages 457, 458 of 258 Iowa, page 100 of 138 N.W.2d are applicable here.

III. Plaintiff's third assignment of error is that the court abused its discretion when it permitted counterclaimants to amend their petition seven days after trial. Plaintiff cites Mundy v. Olds, 254 Iowa 1095, 120 N.W.2d 469 (and, of course, the facts of this trial) as authority for the assertion that the court abused its discretion. In the Mundy case this court held that while amendments to conform to the proof are ordinarily allowed and infrequently disallowed the trial court under the facts of that case did not abuse its discretion in disallowing the amendment. We do not think the Olds case is authority for the proposition that allowance of amendment to conform to the proof here constituted an abuse of discretion. As the trial court here noted: "The amendment and new specification of alleged negligence are not in conflict with the general factual situation

stated in the counterclaim, but it does seek to introduce a new basis of negligence, to wit, a material reduction of speed. The evidence that plaintiff's vehicle had merely slowed down, as distinguished from being (stopped) parked and left standing on the highway, represents plaintiff's theory and was shown in the evidence by plaintiff's cross-examination of defendants' witnesses and by his direct examination of the driver of his own vehicle, Warren. The point concerning reduction in speed was forcefully presented by plaintiff in his argument."

The court cited O'Connell v. Cotter, 44 Iowa 48, 50, and Mooney v. Nagel, 251 Iowa 1052, 1058, 103 N.W.2d 76, 80, as authority for his action. We would also note Brown v. Guiter, 256 Iowa 671, 675, 128 N.W.2d 896, 899. "Liberality in permitting amendments is the general rule, however, this liberality has limits. Determination of such limits is vested in the sound judicial discretion of trial courts. We do not interfere unless an abuse of discretion appears. In considering this question we take into consideration that trial courts are charged with the duty of conducting orderly and expeditious jury trials. Under the record made here we cannot hold the denial of this amendment was an abuse of discretion." See also Shank v. Wilhite, 256 Iowa 982, 129 N.W.2d 662, 665, 666.

 In oral argument counsel referred to the record fact that plaintiff had also requested leave to amend his pleadings re ownership of the car and felt that such request was refused. The court's actual ruling was: "The Motion will be taken under advisement. The plaintiff may tender his proposed amendments to conform with proof subject to leave being granted to file them." This was as far as the court needed to go at that time. Mass v. Mesic, 258 Iowa 1301, 1309, 142 N.W.2d 389, 394, involved a similar motion to amend that, as here, was not followed by filing a motion or obtaining a definite ruling, we there said: "Under this rule, to amend a party must have the amendment allowed by the court. He cannot amend without the court allowing the amendment. Therefore he must pursue his motion to the point of obtaining a ruling. Under this state of the record there is nothing before us to review."

We do not mean to intimate that a formal written application is necessary in every case. But here the court did not have a jury to consider. Plaintiff was clearly invited to formalize the application. He did not do so. Defendants' application was formal and on notice. We think both parties were treated equally.

We find no reversible error.—Affirmed.

All JUSTICES concur.