**BENEFICIAL FINANCE CO. OF BLACK HAWK COUNTY, Appellant,**

**v.**

**Henderson REED, Appellee.**

**No. 55492.**

Supreme Court of Iowa.

Nov. 14, 1973.

Edward D. McCoy, Waterloo, for appellant.

C. A. Frerichs of Fulton, Frerichs, Nutting & Kennedy, Waterloo, and David H. Correll, Waterloo, for appellee.

Submitted to MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

MASON, Justice.

Plaintiff appeals from judgment entered in favor of defendant in law action for deficiency judgment under the Uniform Commercial Code. The action was instituted by plaintiff, Beneficial Finance Company (Beneficial), to recover of defendant, Henderson Reed, the unpaid balance of defendant's promissory note after allowing credit for payments made thereon and for proceeds received from an earlier repossession and sale of defendant's automobile by plaintiff under a secured loan agreement entered into between the parties. The matter was tried to the court without a jury.

October 8, 1969, Reed executed a promissory note in the amount of $1800 to Beneficial. Reed received $1278 under the note, of which $991 was used to purchase a 1965 Chevrolet, $165 paid off the balance on a prior debt owed to Beneficial and $122 was retained by Beneficial for premiums on group credit life and disability insurance. The remainder represented precomputed interest and service charges. The Chevrolet automobile had been pledged as collateral to secure the note.

Reed became delinquent on the account owed Beneficial and on February 2, 1971, Beneficial repossessed the Chevrolet and purportedly mailed Reed the following letter:

"TO: Henderson Reed

DATE: February 2, 1971

Mr. Reed:

This is to notify you that your repossessed car will be put up for bids and sold to the highest bidder. If you wish to make arrangements or bid on the car, call us immediately.

Beneficial Finance of Waterloo

Frank Meyo"

Thereafter, the prospective sale was advertised by Beneficial in the local newspaper, the car was sold at the highest bid of $150 and the proceeds were applied to Reed's account. The trial court denied Beneficial recovery for the balance of the account in light of the provisions of our commercial code.

From that judgment Beneficial appeals assigning as error: (1) the allowance of an amendment to Reed's pleadings to conform with the proof; (2) the finding the letter of February 2 addressed to Reed failed to comply with the Code; (3) the conclusion the sale of the automobile was

not commercially reasonable; and (4) the court's interpretation of the applicable damage provision of the Code.

I. The contested amendment filed by Reed consists of two divisions. The first advances a fourth paragraph to his answer asserting three separate affirmative defenses: usury, failure to conduct the sale of the collateral in a commercially reasonable manner and failure to give proper notification of sale to Reed. In the second division the two latter defenses are set forth as the basis for a counterclaim. The trial court allowed only division I of the amendment.

Rule 88, Rules of Civil Procedure, reads in part as follows:

" * * * The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which no not substantially change the claim or defense. The court may impose terms, or grant a continuance with or without terms, as a condition of such allowance."

Recently, in Smith v. Village Enterprises, Inc., 208 N.W.2d 35 (Iowa 1973), this court considered the propriety of the trial court's ruling allowing plaintiffs to amend their petition 16 days after submission of the case. We repeat as relevant what was said there:

▮ "In considering this matter we start with the principle that trial courts have broad discretion in allowing late amendments under Rule 88, * * *.

"This rule has always received liberal interpretation. Rule 88 contemplates amendments to conform to the proof at any time before final disposition. This includes the right to amend after conclusion of the evidence. Twin Bridges Truck City, Inc. v. Halling, 205 N.W.2d 736 (Iowa 1973) (allowing an amendment to conform to the proof eight days after trial); Hackney v. Tower, 260 Iowa 1101, 1107, 152 N.W.2d 257, 261 (1967) (permitting an amendment

seven days after trial). See also W & W Livestock Enterprises, Inc. v. Dennler, 179 N.W.2d 484, 488 (Iowa 1970); Stauter v. Walnut Grove Products, 188 N.W.2d 305, 307, 308 (Iowa 1971).

▮ "These cases demonstrate the *time* of the amendment is not the determining factor. More important is whether it substantially changes the issues. If so, the amendment should not be allowed. Rule 88, R.C.P.; W & W Livestock Enterprises, Inc. v. Dennler, supra, 179 N.W.2d at 488." (Emphasis in the original) Id. 208 N.W.2d at 37.

▮ In light of the foregoing statements of law this assignment presents the question whether allowance of the amendment to conform to proof by the trial court materially changed the issues or substantially altered the defenses.

In his original answer defendant denied the allegations set forth in plaintiff's petition and alleged as an affirmative defense:

1. Plaintiff has failed to give defendant credit for all payments made under the terms of said note.

2. Plaintiff sold the security item given as security for said note and failed to properly credit defendant with the proceeds of the same.

3. Plaintiff conducted the sale of the security item in such a fraudulent manner as to deny defendant the full value of the security item.

At the close of all evidence defendant moved for leave to amend to conform to proof. In said proposed amendment defendant asserts as affirmative defenses: (1) that plaintiff's note was usurious; (2) that the security sale was not conducted in a commercially reasonable manner; and (3) that defendant received no notice of the time after which the sale would be carried out.

Plaintiff says it "promptly objected to the admissions of the document [amend-

ment to conform to proof] as a violation of rule 88, Iowa Rules of Civil Procedure." However, plaintiff's objection is not set out in the record or in the clerk's certification of all pleadings and calendar sheet in the cause. Nevertheless, the court reserved ruling on the amendment and in its decree filed March 14, 1972, approximately 60 days after trial, noted in its conclusions of law that it would allow division I of plaintiff's amendment.

The basis of plaintiff's argument in support of this assignment is that by reason of the court's granting of defendant's motion to amend to conform to proof almost two months after the close of all evidence Beneficial was denied the opportunity to prepare against the new defenses asserted in the amendment.

This argument is predicated on the contention defendant's amendment substantially changed the defenses.

In the present case the trial court made no mention in its findings or conclusions as to whether the allegations set forth in the post-trial amendment asserted substantially the same theory of defense as was asserted in defendant's original answer. A finding on this question was made by the trial court in Smith v. Village Enterprises, Inc., 208 N.W.2d at 37 and in W & W Livestock Enterprises, Inc. v. Dennler, 179 N.W.2d at 488. The procedure adopted by the trial courts in the cited cases is certainly desirable and helpful to this court in passing on contentions similar to the one urged by plaintiff here.

Paragraph 3 of defendant's original answer, set out supra, charging the sale was conducted in a "fraudulent manner," and the second and third defenses raised in the answer as amended pertain to a single issue: whether Beneficial complied with the provisions of the Uniform Commercial Code, Secured Transactions, sections 554.-9501–554.9507, with respect to notice\ of sale after repossession and the commercial reasonableness of such sale.

The defense of usury although not in issue under the answer as originally pled was not the basis of the court's opinion and is not the basis of Reed's argument on appeal.

The trial court did not abuse its discretion in allowing plaintiff to amend as here.

■ II. Plaintiff's second assignment of error concerns Beneficial's letter addressed to defendant of February 2 which is set out in its entirety, supra.

Section 554.9504(3) provides:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

The trial court made the following conclusions of law:

" * * * The letter purportedly sent to Defendant, and set forth in full above, concerns a private sale of the collateral and hence reasonable notification of the

time after which such sale would occur must be sent to the debtor. Assuming that it was sent to debtor, the letter does not state the time after which any private sale is to be made. * * *

"Further, the gross disparity in testimony concerning value ($700 as stated by Defendant and the $150.00 bid received by Plaintiff) tends to cast doubt as to the commercial reasonableness of the sale. When the pervasive obligation of good faith underlying the entire Commercial Code is also given consideration to this transaction, it casts further doubt upon the good faith performance and commercial reasonableness of the Plaintiff in the sale proceedings of the collateral repossessed. *See* section 554.1203 and annotations thereto. Considering all the facts and circumstances of the transaction at issue herein, it is the opinion of the Court that the disposition of the collateral by Plaintiff was not commercially reasonable under the provisions of Chapter 554 of the 1971 Code of Iowa."

Beneficial was obligated to send Reed "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made" as required by section 554.-9504(3), set out earlier. See Alliance Discount Corp. v. Shaw, 195 Pa.Super. 601, 171 A.2d 548, 550. The initial issue then is whether the letter addressed to Reed suffices as a "reasonable notification," whether it purports to inform Reed of an impending private or public sale.

The trial court determined the letter indicated a prospective private sale thereby necessitating reasonable notification of the time after which the sale would occur. Yet, Beneficial in fact conducted a public sale as the car allegedly was advertised in the local newspaper. Accordingly, reasonable notification of the time and place of the sale should have been sent to Reed.

Irrespective of the nature of the sale it is patently clear the letter set out, supra, fails to satisfy the requirements of section 554.9504(3). Moreover, the record provided this court is devoid of evidence that any notification whatever was in fact properly mailed to Reed even though actual receipt of notice is not a prerequisite. Pacific Discount Co. v. Jackson, 37 N.J. 169, 179 A.2d 745. See also Barker v. Horn, 245 Ark. 315, 432 S.W.2d 21, 22; Nelson v. Monarch Invest. Plan of Henderson, Inc., 452 S.W.2d 375 (Ky.1970); Mallicoat v. Volunteer Finance & Loan Corp., 57 Tenn.App. 106, 415 S.W.2d 347; Conti Causeway Ford v. Jarossy, 114 N.J. Super. 382, 276 A.2d 402.

■ The trial court concluded the sale was commercially unreasonable, giving particular weight to the fact the sale price of the repossessed car was for less than the suggested market value of the collateral at the time of sale. Neither the trial court nor defendant cites any authority relying exclusively on such an observation. See section 554.9507(2). At the same time, the adequacy or insufficiency of the price for which the repossessed collateral is sold has been recognized as one of the "terms" of sale, and therefore is relevant to a determination of whether the sale was commercially reasonable. First National Bank of Bellevue v. Rose, 188 Neb. 362, 196 N. W.2d 507, 509. The court then is confronted with a factual issue of whether the inadequacy of price, in conjunction with other circumstances of the case, renders the sale "commercially unreasonable." Because lack of notice itself suggests Beneficial did not act in a commercially reasonable manner, *Mallicoat,* supra, 415 S.W.2d at 351, there is sufficient support for the court's findings and conclusions.

Even if we were to agree with plaintiff's contention that its sale of defendant's automobile was commercially reasonable, which we do not, the provision of section 554.-9504(3) that "every aspect of the disposi-

tion including the method, manner, time, place and terms must be commercially reasonable", does not affect the requirement of notice demanded by this section.

"* * * Reasonable notification of the sale must be given *unless* the collateral is either (1) perishable, or (2) threatens to decline in value, or (3) is of a type customarily sold on a recognized market. The latter is the only exemption upon which plaintiff could rely in this case. The reason for exempting such transaction from the notice requirement obviously is because the price on the recognized market represents the fair market value from day to day. The purpose of notice is to permit the debtor to bid at the sale or to protect himself from an inadequate sale price. If there is an established and recognized market, theoretically the best price at any given time is the current market price." (Emphasis in the original) Nelson v. Monarch Invest. Plan of Henderson, Inc., 452 S.W.2d at 376–377.

In *Nelson* the court agreed with the view taken in Pennsylvania and Arkansas that there is no recognized market for repossessed automobiles as a class.

■ In our opinion these decisions are sound. We agree that a used automobile does not fall within the category of collateral "of a type customarily sold on a recognized market." Plaintiff's argument to the contrary is not persuasive. The assignment cannot be sustained.

III. Plaintiff's third assignment attacks the court's conclusion the sale of defendant's automobile was not commercially reasonable.

■ What we have said in the foregoing division disposes of this assignment except to add there can be no real dispute that the owner of personal property is qualified as competent to testify as to its value. This court has many times held that ownership of property, in itself, qualifies the owner to give an opinion as to its value. Ruth v. O'Neill, 245 Iowa 1158, 1176, 66 N.W.2d 44, 54; Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 36, 55 N.W.2d 528, 532; Johnson v. Scott, 258 Iowa 1267, 1270, 142 N.W.2d 460, 462; Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 856 (Iowa 1973) and authorities cited in these opinions.

■ IV. In its remaining assignment plaintiff maintains the court erred in its interpretation of the damage provision of section 554.9507(1). The trial court held plaintiff could not recover any of the deficiency on defendant's unpaid note.

This section of the Iowa Commercial Code affords a debtor the following remedy:

"If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price."

The courts have made two interpretations of section 554.9507(1). The first interpretation is the one which was used by the court here; that interpretation prevents the creditor who has not proceeded in accordance with the provisions of the Code in regard to notification or in any other manner involved in collecting on the debt owed, from obtaining any of the deficiency amount.

This rationale finds support in Braswell v. American National Bank, 117 Ga.App.

699, 161 S.E.2d 420, 422, where the court said:

"* * * [Y]et the majority of the courts in this country in applying these provisions of the Act have reached the conclusion that the act of the secured party, in selling the collateral without strict compliance with the notice of sale provisions, precludes the purchaser or owner from exercising his right of redemption under Section 109A–9–506, and for that reason the secured party cannot recover for the deficiency. * * * [citing authorities]."

Similarly, the author of Annot., 49 A.L.R.2d 15, 82 n. 3 makes this observation: "The 1952 Draft of the proposed Uniform Commercial Code (section 9–504) apparently * * * contemplates that in the case where resale is compulsory, such resale is a condition precedent to recovery of deficiency."

To the same effect is Aimonetto v. Keepes, Wyo., 501 P.2d 1017, 1019, wherein the court states:

"* * * Even so, we are persuaded that one general principle upon which plaintiffs rely is applicable here, that is, compliance with section 34–9–504(3) is a condition precedent to recovery of any deficiency between sale price of collateral and the amount of the unpaid price. * * * [citing authorities]." See also Foundation Discounts, Inc. v. Serna, 81 N.M. 474, 468 P.2d 875, 877.

The second interpretation does not automatically deny the creditor any of the deficiency but places the burden of proof on him to show what the sale would have brought if done in compliance with the Code. Thus, the amount between what the sale brought when performed improperly, and what it should have brought if done correctly, would be damages allowable to the debtor. If such amount did not equal the total deficiency the creditor may re-cover, in the proper manner, the amount remaining unpaid. Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 147–149, 398 S.W.2d 538, 541–542, enumerated this latter rule. There the court stated that under 85–9–507(1) of the Arkansas statute the burden is on the creditor to show that less than the total amount in damages was sustained by the debtor. That is, there is a presumption in the first instance that the collateral was worth at least the amount of the debt thereby shifting to the creditor the burden of proving the amount should have reasonably been obtained through a sale conducted according to law.

Thus, the creditor would be allowed to try to prove the amount that would have been realized had the sale been done pursuant to law. If the amount proved was less than the balance of the debt, the debtor would be required to pay the difference. It should be noted that the creditor in such a case might simply be unable to rebut the presumption whereupon the debtor would be deemed to have made complete satisfaction of the debt.

Investors Acceptance Co. v. James Talcott, Inc., 454 S.W.2d 130, 141 (Tenn.App. 1969), followed the Norton rationale in regard to damages allowed the creditor. The court stated: "* * * The sale of the security under the circumstances shown raises a prima facie presumption that the security sold for less than its true value and that the true value was prima facie sufficient to satisfy the debt in each case. Upon remand, the burden will be upon complainant [the lending institution] to overcome each of these prima facie presumptions by showing the true, actual value of the security on the date it was sold, or the price which would have been paid for the security at a foreclosure sale held in a commercially reasonable manner."

The court in Conti Causeway Ford v. Jarossy, 114 N.J.Super. at 386, 276 A.2d at

404–405, elected not to preclude recovery for failure of proper notice alone:

"* * * The Code does not require the precise notice formerly required under the Uniform Commercial Sales Act. The underlying theory of the Code is to set forth rules for commercial transactions which are commercially reasonable. See N.J.S.A. 12A:9–504, comment 1.

"In the situation where reasonable notice of sale has not been given, the spirit of commercial reasonableness requires that the secured party not be arbitrarily deprived of his deficiency but that the burden of proof be shifted to him to prove that the sale resulted in the fair and reasonable value of the security being credited to the debtor's account. When that burden has been borne, the resultant deficiency ought to be collectable by the secured party, especially in view of the rights to damages afforded the debtor by N.J.S.A. 12A:9–507. In the case at bar the parties have stipulated that the resale price was fair and reasonable. Thus, the burden of proving commercial reasonableness has been met by the secured party."

Consistent with each of the foregoing interpretations of section 554.9507(1) is the proposition that the determinative issue where the secured party seeks recovery of a deficiency in the absence of proper notice is whether the secured party has met the burden of proving commercial reasonableness of the sale of the collateral.

This court has determined in divisions II and III, supra, that plaintiff's sale of defendant's automobile was not commercially reasonable.

Under the factual circumstances presented by the record in the case before us defendant would not be entitled to recover a deficiency under either interpretation.

The case is therefore—Affirmed.